UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHANN ALEXANDER BASS,

                              Plaintiff,

        -against-                                    9:22-CV-1107 (LEK/ML)

BRIAN P. SCHENCK, *et al.*,

                              Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

        The Clerk has sent to the Court for review a complaint filed by pro se Plaintiff Johann

Bass asserting claims under 42 U.S.C. § 1983 ("Section 1983") arising out of his confinement at

Cayuga County Jail ("Cayuga C.J."). Dkt. No. 1 ("Complaint"). Plaintiff has not paid the filing

fee for this action and seeks leave to proceed in forma pauperis ("IFP"). Dkt. No. 10 ("IFP

Application").[1] Plaintiff also filed a motion for preliminary injunctive relief, Dkt. No. 2

("Motion for Preliminary Injunctive Relief"); a motion for counsel, Dkt. No. 3 ("Motion for

Counsel"); and a motion for an order compelling the Cayuga County Sheriff and/or Cayuga

County to identify the John Doe Defendants referenced in Plaintiff's Complaint, Dkt. No. 4.

## II.     IFP APPLICATION

        "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court

without prepayment of the filing fee that would ordinarily be charged." Cash v. Bernstein, No.

_____

[1] On October 27, 2022, this action was administratively closed due to Plaintiff's failure to submit
a certified application for IFP status. Dkt. No. 8. The case was reopened on November 4, 2022,
upon receipt of the required filing. Dkt. No. 12.

09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." Id. (citing 28 U.S.C. § 1915(b) and Harris v. City of New York, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review of Plaintiff's certified IFP Application, Dkt. No. 10, the Court finds that Plaintiff has demonstrated sufficient economic need to proceed IFP. See 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. Dkt. No. 11. Therefore, the Court grants Plaintiff's IFP Application.[3]

## III.    SUFFICIENCY OF THE COMPLAINT

### A.  Legal Standard

Having found that Plaintiff meets the financial criteria for commencing this action IFP, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A.

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the

---

[2] Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. See http://pacer.uspci.uscourts.gov. It does not appear that Plaintiff had accumulated three strikes for the purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

[3] Because Plaintiff's IFP Application was certified by an official at Cayuga C.J., Plaintiff's motion for assistance in obtaining a certified IFP Application, Dkt. No. 5, is denied as moot.

action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

"An action is frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998) (cleaned up). An action "is malicious if it was filed with the intention or desire to harm another." Tafari v. Hues, 473 F.3d 440, 442 (2d Cir. 2007) (quoting Andrews v. King, 398 F.3d 1113, 1121 (9th Cir. 2005)).

Separately, an action fails to state a claim when the complaint does not "plead 'enough facts to state a claim to relief that is plausible on its face.'" Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 489 (2d Cir. 2018) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "In reviewing the complaint, the court 'accepts as true all factual allegations in the complaint' and draws inferences from these allegations in the light most favorable to the plaintiff." Osuch v. Gregory, 303 F. Supp. 2d 189,

192 (D. Conn. 2004) (quoting <u>Cruz v. Gomez</u>, 202 F.3d 593, 596 (2d Cir. 2000)). The Court, however, need not accept "conclusory allegations or legal conclusions couched as factual . . . allegations." <u>Nielsen v. Rabin</u>, 746 F.3d 58, 62 (2d Cir. 2014) (quoting <u>Rothstein v. UBS AG</u>, 708 F.3d 82, 94 (2d Cir. 2013)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Iqbal</u>, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). The Supreme Court has stated that Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 555). Therefore, a pleading that only "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557).

In reviewing a complaint filed by a pro se litigant, a court has the duty to construe the complaint liberally, <u>see</u> <u>Nance v. Kelly</u>, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." <u>Anderson v. Coughlin</u>, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). A court should also not dismiss claims filed by a pro se litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." <u>Branum v. Clark</u>, 927 F.2d 698, 704–05 (2d Cir. 1991); <u>see also</u> Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the

plaintiff's] causes of action is substantive" such that "better pleading will not cure it." Cuoco v.

Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

**B.  Summary of the Complaint**

Plaintiff alleges wrongdoing that occurred while Plaintiff was confined as a pretrial

detainee at Cayuga C.J. The following facts are set forth as alleged in the Complaint.

*1.    Allegations Regarding Treatment for Chest Pains*

On January 12, 2022, Plaintiff was arrested and "booked" into Cayuga C.J. Id. at 7. At

that time, Plaintiff complained to "[t]he officers who booked [him]" regarding his "extreme chest

pains . . . ." Id. "The pain increased[,] causing [Plaintiff] to show obvious signs of distress." Id.

The unnamed officers "made clear that they were not medical staff," and directed Plaintiff to

"get in touch with medical staff through the request process . . . ." Id. Due to COVID-19

concerns, Plaintiff was then placed into "quarantine" for two weeks "until multiple rapid COVID

tests returned negative results." Id. During those two weeks, Plaintiff submitted "multiple

requests" for medical treatment for chest pains and advised the nursing staff that he suffered

from "extreme pain" and asthma. Id. at 7–8. Plaintiff "was also told at some point that the

[correctional] officers had Tylenol and Ibuprofen upon asking." Id. at 8. "The [over-the-counter]

medications given to [Plaintiff] by the officers did not lessen the pain [Plaintiff] was

experiencing." Id.

"After 15–20 days of extreme pain, without seeing the doctor, one of the nurses informed

[Plaintiff] that [he] had been prescribed an antibiotic and Naprox[e]n." Id. Plaintiff took the

medication, as prescribed, and noticed an improvement in his condition. Id. "The nurses [also]

communicated [to Plaintiff] that each of [his] requests [for medical treatment] had been received

and that they had informed the doctor of [his] medical condition." Id.

Given the delays described above, Plaintiff argues that Doctor John Doe #4[4] "was deliberately indifferent to [his] serious medical needs by delaying, unnecessarily, treatment of my conditions. The doctor was also aware of the increased risk to my health due to him knowing I have asthma." Id. Plaintiff also argues Medical Director John Doe #3 and Cayuga County are:

> liable for the delay in medical care through custom and usage of acts contributing to delays in medical care and/or omissions in policies, failures to train, lack of policies regarding medical screening at the booking stage, triage, assessment and timeliness of care and are [the] driving force or otherwise contributed to the delay in medical care thereby violating my constitutional rights to adequate medical care.

Id. at 9. Plaintiff adds that "under Helling v. McKinney[, 509 U.S. 25 (1993)], the unreasonable risk of future delays in medical care states a cause of action." Compl. at 9.

> 2. *Allegations Regarding Treatment for Mental Health*

Plaintiff also alleges that, during his ten months at Cayuga C.J., he "submitted 8–10 requests for mental health treatment, all of which were submitted after jail staff placed me on a constant watch for their concerns regarding my mental health." Id. at 12. He submitted these requests "both in writing and electronically on the tablets," and claims to have "received responses saying that 'meth brought you here,' 'this is not a treatment center,' and 'all you want is drugs.'" Id. Plaintiff "ha[s] not received any mental health treatment in any form." Id.

Plaintiff has also been repeatedly subjected to "psychological abuse." Id. at 14–16. Plaintiff hears voices speaking to him "over the PA system" about his past crimes, his fiancée, and his children, as well as voices encouraging him to assault other inmates, among other things.

---

[4] Plaintiff refers to Doctor John Doe as "Defendant #6," since Doctor John Doe is the sixth defendant Plaintiff names in his Complaint, see Compl. at 2–3, but the Court refers to this defendant as "Doctor John Doe #4" because he is the fourth "John Doe" Plaintiff identifies in his Complaint, see id. The Court employs the same approach to all the "John Doe" defendants throughout this Memorandum-Decision and Order.

6

Id. at 15. These unidentified voices routinely "wake [Plaintiff] up twice a night to say bad stuff to [him]." Id. at 16. On at least one occasion, Plaintiff "banged" his head on his cell door in an attempt to make the voices stop. Id.

Given the lack of mental health treatment described above, Plaintiff argues that Medical Director John Doe #3, Mental Health Doctor John Doe #5, and Cayuga County are liable for "violating [his] constitutional right to mental health treatment." Id. at 12–13. Plaintiff again argues that the "policies" at Cayuga C.J. were the "driving force or otherwise contributed to the denial of [his] mental health treatment . . . ." Id. at 13.

Plaintiff also asserts that the "mental, emotional and physical abuse" he was forced to endure while he was denied mental health treatment violates "substantive due process and due process of law," id. at 14, and gives rise to claims against Sheriff Brian P. Schenck, Under-Sheriff William Steven Smith, Jail Commander John Doe #1, and "various lieutenants, s[e]rgeants and corporals employed at the Cayuga County Jail," id. at 4, 14.

3.    Allegations Regarding Access to the Courts

In early 2022, Plaintiff sought "to address the delay in care" regarding his extreme chest pains, and thus requested "indigent legal supplies consisting of something to write with, paper, copies and envelopes to mail my documents to the Court." Id. at 10. Plaintiff's request was "summarily denied," and he was "referred, during the grievance process, to the 'indigent pack' on the inmate store and was told that the minimum standards for the state of New York had been met." Id.

"Several months later," on September 26, 2022, Plaintiff filed a habeas corpus petition in this District. Id. at 10; see also Bass v. Cayuga Cnty. Sheriff, No. 22-CV-1009 (N.D.N.Y. Sept. 26, 2022) ("Habeas Docket"). Plaintiff made a second request for legal supplies, as well as for

"federal civil rights complaint forms . . . ." Compl. at 10.[5] "The Defendants through their staff refused to provide the requested forms citing their availability on the tablet . . . ." Id. at 11, Because of their refusal to provide the requested forms, Plaintiff argues that Sheriff Schenck, Under-Sheriff William Steven Smith, Jail Commander John Doe #1, and Legal Services Supervisor John Doe #2 "unconstitutionally blocked, obstructed or otherwise delayed my access to court . . . ." Id.

### 4.   Allegations Regarding Disciplinary Surcharges

On September 19, 2022, Plaintiff received a ticket charging him with "disobey[ing] a direct order," despite Plaintiff claiming he "never disobeyed a direct order . . . ." Id. at 19. Disciplinary Coordinator John Doe #6 came to Plaintiff's cell "without any notice after three days, found me guilty and gave me time served on a five day lockdown." Id. Plaintiff also incurred a $25.00 surcharge, which was deducted from Plaintiff's inmate trust account. Id. Plaintiff argues that Sheriff Schenck, Under-Sheriff Smith, Jail Commander John Doe #1, and Disciplinary Coordinator John Doe #6 deprived him of "due process" when they took money from him "for violating institutional rules . . . ." Id. at 20.

### 5.   Allegations Regarding Medical Privacy

Plaintiff also alleges that during his time at Cayuga C.J., "staff who are not trained medical staff access[ed] [Plaintiff's] private health information for purposes not related to providing me medical attention, such as arguing against me in the institutional grievance process, as well as passing out prescribed medications . . . and asking about protected health information during booking." Id. at 21. Because of this access, Plaintiff argues that Sheriff Schenck, Under-

---

[5] On January 20, 2023, the Court in the Habeas Docket ordered the Clerk of the Court "to provide [Plaintiff] with a 42 U.S.C. Section 1983 Packet for his reference." Habeas Dkt. No. 5.

Sheriff William Steven Smith, Jail Commander John Doe #1, Medical Director John Doe #3, and Cayuga County have violated his substantive due process right to privacy and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

6.      *Plaintiff's Request for Relief*

Plaintiff seeks monetary damages and injunctive relief. For more detail regarding the specific relief he requests, reference is made to pages 23 and 24 of the Complaint.

**C.  Analysis of Plaintiff's Claims**

Plaintiff's constitutional claims are brought pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993).

1.      *Claims Against Various Lieutenants, Sergeants, and Corporals Employed at Cayuga C.J.*

"It is well-settled in [the Second] Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" Austin v. Pappas, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)). "[T]here is no special rule for supervisory liability." Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020). "Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Id. (citing Iqbal, 556 U.S. at 676).

In this action, Plaintiff identifies "various lieutenants, sergeants, and corporals employed at Cayuga C.J." as "Defendants 10–15" in his list of parties. Compl. at 4. In the body of his Complaint, he briefly alleges that these various unidentified persons violated his due process rights by "subjecting [him] and other inmates to psychological abuse." Id. at 14. However, Plaintiff does not provide any additional detail regarding the acts or omissions of these various unidentified persons that would give rise to a constitutional violation. Id. at 14–18.

In the absence of factual allegations that plausibly suggest that these persons were personally involved in conduct that violated Plaintiff's constitutional rights, the Complaint fails to state a cognizable claim against such persons. See Cipriani v. Buffardi, No. 06-CV-0889, 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff."); see also Casino v. Rohl, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (sua sponte dismissing an amended complaint because the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations described).

Accordingly, the Court dismisses the claims Plaintiff has brought against "various lieutenants, sergeants, and corporals employed at Cayuga C.J." for failure to state a claim upon which relief may be granted. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

2.    *Fourteenth Amendment Medical Indifference Claims*

Because Plaintiff alleges he was confined as a pretrial detainee, his medical indifference claims are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment. See generally Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).

a.     Medical Indifference Claims Against Doctor John Doe #4, Medical
        Director John Doe #3, and Mental Health Doctor John Doe #5

To state a claim for deliberate indifference to serious medical needs, a pretrial detainee must satisfy a two-pronged test. "The first requirement is objective: 'the alleged deprivation of adequate medical care must be "sufficiently serious."'" Lloyd v. City of New York, 246 F. Supp. 3d 704, 717 (S.D.N.Y. 2017) (quoting Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 139 (2d Cir. 2013)).[6] "The second requirement is subjective . . . ." Lloyd, 246 F. Supp. 3d at 717. Specifically, a detainee must "allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." Charles v. Orange Cnty., 925 F.3d 73, 87 (2d Cir. 2019) (emphasis in original).[7]

With due regard to Plaintiff's pro se status, the Court finds that Plaintiff, for the purposes of sufficiency review under 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b), has plausibly alleged that Doctor John Doe #4 and Medical Director John Doe #3 were deliberately indifferent to Plaintiff's medical needs regarding his extreme chest pains. In so doing, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

The Court also finds that Plaintiff, for the purposes of sufficiency review under 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b), has plausibly alleged that Medical Director John Doe #3 and

---

[6] The analysis of the "objective prong" is the same under both the Eighth and Fourteenth Amendments. Darnell, 849 F.3d at 30.

[7] Mere recklessness is sufficient to support a claim for deliberate medical indifference under the Fourteenth Amendment, as opposed to under the Eighth Amendment, in large part because "pretrial detainees [whose claims are brought pursuant to the Fourteenth Amendment] have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually *nor otherwise*." Darnell, 849 F.3d at 29 (emphasis added).

Mental Health Doctor John Doe #5 were deliberately indifferent to Plaintiff's medical needs by failing to provide adequate mental health treatment. In so doing, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

b. Medical Indifference Claims Against Cayuga County

Plaintiff also brings medical indifference claims against Cayuga County for (1) the delays in treating his extreme chest pains and (2) his lack of adequate mental health treatment.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor . . . ." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (emphasis in original). "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." Id. Therefore, local "governments should be held responsible [in Section 1983 claims] when, and only when, their official policies cause their employees to violate another person's constitutional rights." City of St. Louis v. Praprotnik, 485 U.S. 112, 122 (1988). As a result, in order for a municipality to be liable under Section 1983 for acts of a public official, a plaintiff must plausibly allege "that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (citing Monell, 436 U.S. at 690–91).

In the Complaint, Plaintiff alleges that Cayuga County is:

> liable for the delay in medical care [regarding Plaintiff's extreme chest pains] through custom and usage of acts contributing to delays in medical care and/or omissions in policies, failures to train, lack of policies regarding medical screening at the booking stage, triage, assessment and timeliness of care and are [the] driving force or otherwise contributed to the delay in medical care thereby violating my constitutional rights to adequate medical care.

Compl. at 9. Plaintiff alleges similar systemic failures with respect to his lack of mental health treatment. Id. at 13.

With due regard to Plaintiff's pro se status, the Court finds that Plaintiff, for the purposes of sufficiency review under 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b), has plausibly alleged that an official policy of Cayuga County resulted in deliberate indifference to Plaintiff's medical needs regarding (1) his extreme chest pains and (2) his mental health treatment. In so doing, the Court expresses no opinion as to whether these claims against Cayuga County for deliberate medical indifference can withstand a properly filed dispositive motion.

### 3.     Access to Courts Claims

The "right of access to the courts" requires states "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Bounds v. Smith, 430 U.S. 817, 828 (1977), modified on other grounds by Lewis v. Casey, 518 U.S. 343, 350 (1996). "However, this right is not 'an abstract, freestanding right to a law library or legal instance' and cannot ground a Section 1983 claim without a showing of 'actual injury.'" Collins v. Goord, 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006) (quoting Lewis, 518 U.S. at 351). To state a claim for denial of access to the courts, a plaintiff must "go one step further" than merely "establishing that his prison's law library or legal assistance program is subpar . . . ." Lewis, 518 U.S. at 351. He must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim," such as by "show[ing], for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known." Id. In other words, the injury must be to an inmate's ability "to attack [his] sentence[ ], directly or collaterally, [or] . . . to challenge the conditions of [his] confinement." Id. at 355. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id.

Here, Plaintiff alleges that Sheriff Schenck, Under-Sheriff Smith, Jail Commander John Doe #1, and Legal Services Supervisor John Doe #2, through the actions of their staff, refused to provide Plaintiff with "legal supplies" and hard copies of forms. Compl. at 11. Plaintiff alleges that as a result of the staff's refusal to provide forms, his right to access the courts was "blocked, obstructed, or otherwise delayed[.]" Id. At the same time, Plaintiff acknowledges the "availability" of the appropriate legal forms on the "tablet" computer system while he was incarcerated at Cayuga C.J. Id. The Court also notes that Plaintiff was able to commence a habeas action, see Habeas Docket, and this civil rights action, within months of Plaintiff first making his request for legal supplies and the relevant forms at Cayuga C.J., Compl. at 10.[8]

Here, Plaintiff directs nearly all of his factual allegations at unidentified "staff." See, e.g., Compl. at 10–11 (alleging that "defendants though their staff" engaged in the complained-of conduct). Plaintiff has failed to allege that the listed Defendants—i.e., Sheriff Schenck, Under-Sheriff Smith, Jail Commander John Doe #1, and Legal Services Supervisor John Doe #2—were the ones who were *personally involved* in obstructing or delaying Plaintiff's access to the courts. See Tangreti, 983 F.3d. at 618. Furthermore, Plaintiff has not articulated how the complained-of conduct by staff resulted in "actual injury." Lewis, 518 U.S. at 351. For instance, Plaintiff does

---

[8] Plaintiff also makes allegations about being prevented from mailing documents related to a possible libel suit against a newspaper in one of his supplemental submissions in support of his Motion for Preliminary Injunctive Relief. See Dkt. No. 15 at 3–4. But for the purposes of this sufficiency review, the Court only looks to the claims raised in Plaintiff's Complaint and any documents attached thereto. Should Plaintiff wish to raise these other factual allegations concerning any barriers to him bringing a possible libel suit in this litigation, he must file an amended complaint. In any amended complaint that plaintiff submits in response to this Memorandum-Decision and Order, he must set forth a short and plain statement of the facts on which he relies to support his claims that the individuals named as defendants engaged in misconduct or wrongdoing that violated his constitutional rights. Any amended complaint will completely replace the present Complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference.

not explain how the delays caused by staff failing to provide him with hard copies of forms,
when they were available elsewhere, led to "actual injury" in litigating the habeas action, this
civil rights action, or any other action. See David v. Goord, 320 F.3d 346, 352 (2d Cir. 2003)
(noting that "mere 'delay in being able to work on one's legal action or communicate with the
courts does not rise to the level of a constitutional violation'" (quoting Jermosen v. Coughlin,
877 F. Supp. 864, 871 (S.D.N.Y. 1995))). The same can be said for Plaintiff's allegations that
staff did not immediately provide him with writing utensils, paper, and envelopes, as his filings
in this action show he eventually received such materials. See, e.g., Dkt. No. 1-2.

Accordingly, Plaintiff's access-to-courts claims are dismissed without prejudice for
failure to state a claim upon which relief may be granted.

### 4.   Remaining Fourteenth Amendment Due Process Claims

Plaintiff brings several other claims sounding in substantive and procedural due process
pursuant to the Fourteenth Amendment to the United States Constitution.[9]

### a.   Claims Regarding Plaintiff's Deprivation of Property

Plaintiff claims that Sheriff Schenck, Under-Sheriff Smith, Jail Commander John Doe #1,
and Disciplinary Coordinator John Doe #6 wrongfully seized money from Plaintiff's prison
inmate account without sufficient due process. Compl. at 20.

---

[9] In analyzing these claims sounding in substantive and procedural due process, the Court is
especially mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be
construed liberally and interpreted to raise the strongest arguments that it suggests. See, e.g.,
Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too
numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be
construed liberally); Phillips v. Girdich, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the
district court to determine what other claims, if any, [the plaintiff] has raised. In so doing, the
court's imagination should be limited only by [the plaintiff's] factual allegations, not by the legal
claims set out in his pleadings.").

The Supreme Court has held that "an unauthorized deprivation of [a prisoner's private] property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984); see also Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006) ("When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy."). "New York in fact affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action." Jackson v. Burke, 256 F.3d 93, 96 (2d Cir. 2001) (per curiam) (plaintiff was seeking compensation for documents that had been destroyed in transit to prison).

Accordingly, the Court finds that Plaintiff's deprivation of property claim is dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b), for failure to state a claim upon which relief may be granted. See Pittman v. Billings, No. 20-CV-422, 2020 WL 2079440, at *3 (N.D.N.Y. Apr. 30, 2020) (finding that the plaintiff's claim that the defendants deprived him of $213.30 was not cognizable under Section 1983 because New York law provides an adequate post-deprivation remedy), rep. rec. adopted sub nom. Pittman v. SGT/INV Stacey Billings, 2020 WL 2574631 (N.D.N.Y. May 21, 2020).

### b.      Claims Regarding Plaintiff's Right to Medical Privacy

Plaintiff also alleges his substantive due process right to medical privacy under the Fourteenth Amendment was violated by Sheriff Schenck, Under-Sheriff William Steven Smith, Jail Commander John Doe #1, Medical Director John Doe #3, and Cayuga County.

"The Fourteenth Amendment's Due Process Clause protects an inmate from the unwanted disclosure of information pertaining to an inmate's health." Davidson v. Desai, 817 F.

16

Supp. 2d 166, 191 (W.D.N.Y. 2011) (citing <u>Doe v. City of New York</u>, 15 F.3d 264, 267 (2d Cir. 1994)). However, "the interest in the privacy of medical information will vary with the condition." <u>Powell v. Schriver</u>, 175 F.3d 107, 111 (2d Cir. 1999). "Confidential medical conditions are those that are 'excruciatingly private and intimate [in] nature' such as those 'likely to provoke . . . an intense desire to preserve one's medical confidentiality.'" <u>Matson v. Bd. of Educ. of City Sch. Dist. of New York</u>, 631 F.3d 57, 64 (2d Cir. 2011) (alterations in original) (quoting <u>Powell</u>, 175 F.3d at 111). When an inmate does have a confidentiality interest in a condition, "[p]rison officials can impinge on that right only to the extent that their actions are 'reasonably related to legitimate penological interests.'" <u>Powell</u>, 175 F.3d at 112. "[T]he gratuitous disclosure of an inmate's confidential medical information as humor or gossip . . . is not reasonably related to a legitimate penological interest." <u>Id.</u>

Here, Plaintiff claims defendants accessed his "private health information" for the purposes of "arguing against [him] in the institutional grievance process, as well as passing out prescribed medications . . . and asking about protected health information during booking." Compl. at 21. While Plaintiff describes the disclosed information as "personal health information," he does not provide any further facts related to what information was compromised, and fails to specify what medical condition this information is related to.[10] Furthermore, "passing out prescribed medications," and "asking about protected health information during booking," appear rationally related to a legitimate penological interest. <u>Cf.</u> <u>Dash v. Myers</u>, No. 19-CV-0414, 2020 WL 1946303 (S.D.N.Y. Apr. 23, 2020), at *5 (observing that the disclosure of "medical information in the course of providing emergency medical

---

[10] The Court refers Plaintiff to Local Rules of Practice 5.2 and 5.3 for the Northern District of New York should Plaintiff wish to file an amended complaint in the future and seal any references to confidential medical records, treatments, and diagnoses.

treatment to an inmate" constitutes "a legitimate penological interest" (citations omitted)). However, gratuitously disclosing Plaintiff's confidential medical information in the context of a grievance process could rise to the level of a cognizable privacy violation, especially if that disclosure is not reasonably related to adjudicating the grievance in question, but again, Plaintiff fails to provide sufficient detail to show that such a privacy violation occurred.

Without more, Plaintiff has not stated a Fourteenth Amendment claim for disclosure of medical information. See, e.g., Davidson, 817 F. Supp. 2d at 192 (dismissing a Fourteenth Amendment claim for disclosure of medical information where the plaintiff had "not specified which of his medical conditions . . . was so 'unusual' that the disclosure . . . arose to a Fourteenth Amendment violation"). As a result, Plaintiff's invasion of privacy claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b).

c.    Claims Regarding Psychological and Other Forms of Abuse

In describing his lack of adequate mental health treatment, Plaintiff also makes a series of troubling allegations concerning events he saw or heard while incarcerated at Cayuga C.J., including events concerning public figures and family members who are not parties to Plaintiff's action. See Compl. at 14–18. At the very least, these alleged facts fail to show that the listed defendants—Sheriff Schenck, Under-Sheriff Smith, and Jail Commander John Doe #1—were personally involved in the acts which Plaintiff argues give rise to a "substantive due process" violation for "mental, emotional, and physical abuse." Id. at 14; see also Tangreti, 983 F.3d. at 618.[11] Furthermore, to the extent that these allegations of abuse are relevant to the failure to

---

[11] He also lists "various lieutenants, s[e]rgeants and corporals employed at the Cayuga County Jail" as defendants to his claims seeking to recover for this abuse, but for reasons stated earlier in this Memorandum-Decision and Order, see supra Section III.C.1, any claims brought against such persons have already been dismissed.

18

provide Plaintiff with adequate mental health treatment, the Court has already found that Plaintiff's Fourteenth Amendment deliberate medical indifference claims may proceed. See supra Section III.C.2. As a result, Plaintiff's substantive due process claims concerning his allegations of abuse are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b).

5.    *HIPAA Claims*

Plaintiff also asserts a Section 1983 claim based upon HIPAA. Compl. at 21. However, there is no express or implied private right of action under HIPAA, and HIPAA cannot be privately enforced via Section 1983. See Rodgers v. Rensselaer County Sheriff's Dep't, No. 14-CV-1162, 2015 WL 4404788, at *7 (N.D.N.Y. July 17, 2015) (citations omitted); Bibeau v. Soden, No. 08-CV-671, 2009 WL 701918, at *6 (N.D.N.Y. March 13, 2009) (citation omitted); see also Bond v. Connecticut Bd. of Nursing, 622 Fed. App'x 43, 44 (2d Cir. 2015) ("It is doubtful that HIPAA provides a private cause of action at all; but we need not decide the issue" in this appeal) (footnotes omitted); Adams v. Eureka Fire Prot. Dist., 352 Fed. App'x 137, 139 (8th Cir. 2009) (holding that "[s]ince HIPAA does not create a private right, it cannot be privately enforced either via § 1983 or through an implied right of action"); Acara v. Banks, 470 F.3d 569, 571 (5th Cir. 2006) (finding that Congress intended that HIPAA be enforced only by the Secretary of Health and Human Services).

Accordingly, Plaintiff's claims alleging HIPAA violations are dismissed with prejudice pursuant to §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

IV.     MOTION FOR PRELIMINARY INJUNCTION

On the same day Plaintiff filed his Complaint, he also moved for a preliminary

injunction. See Mot. Prelim. Inj. Throughout the Motion for Preliminary Injunctive Relief and

his subsequent supporting submissions, Dkt. Nos. 14–16, Plaintiff seeks an order from this Court

directing Sheriff Schenck to "stop all actions" related to the "psychological abuse" described in

Plaintiff's substantive due process claim. Id. at 1; Dkt. No. 14 at 3–6. Plaintiff also moves for an

order directing Schenck to "bring the Cayuga C.J. in compliance regarding access to court

issues." Dkt. No. 15.

"The fundamental purpose in granting preliminary injunctive relief has always been to

preserve the court's ability to later render a meaningful final decision on the merits by preventing

irreparable harm in the interim." Fairfield Cnty. Med. Ass'n v. United Healthcare of New

England, 985 F. Supp. 2d 262, 270 (D. Conn. 2013) (cleaned up), aff'd as modified sub nom.

557 Fed. App'x 53 (2d Cir. 2014). "'It is axiomatic that the contours of an injunction are shaped

by the sound discretion of the trial judge . . . .'" Church & Dwight Co. v. SPD Swiss Precision

Diagnostics, GmbH, 843 F.3d 48, 72 (2d Cir. 2016) (quoting Merck Eprova AG v. Gnosis

S.p.A., 760 F.3d 247, 265 (2d Cir. 2014)).

"In most cases, a party seeking a preliminary injunction must demonstrate (1) that it will

be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success

on the merits or (b) sufficiently serious questions going to the merits of the case to make them a

fair ground for litigation, and a balance of hardships tipping decidedly in its favor." Forest City

Daly Hous., Inc. v. Town of N. Hempstead, 175 F.3d 144, 149 (2d Cir. 1999).

Given that the underlying claims establishing the bases for Plaintiff's Motion for

Preliminary Injunctive Relief did not survive § 1915 sufficiency review, see supra Section III.C.3

20

(dismissing First Amendment access-to-courts claims), Section III.C.4.c (dismissing Fourteenth Amendment substantive due process claims related to Plaintiff's allegations of psychological abuse), Plaintiff cannot establish that he has a likelihood of success on the merits of those claims, or that there are even sufficiently serious questions regarding their merits. See Santos v. Wood, No. 20-CV-421, 2020 WL 3211136, at *12 (N.D.N.Y. June 15, 2020) (Kahn, J.). Hence, the Court denies Plaintiff's Motion without prejudice.

## V.    MOTION TO APPOINT COUNSEL

Plaintiff also moves for the appointment of counsel to secure witness statements regarding his claims. See Mot. Counsel.

It is well-settled that there is no right to appointment of counsel in civil matters. Burgos v. Hopkins, 14 F.3d 787, 789 (2d Cir. 1994). Title 28 of United States Code, Section 1915, specifically provides that a court may request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. Cooper v. A. Sargenti, Inc., 877 F.2d 170, 172–73 (2d Cir. 1989).

In Terminate Control Corp. v. Horowitz, the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion. See 28 F.3d 1335 (2d Cir. 1994). In deciding whether to appoint counsel, the court should first determine whether the indigent litigant's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination. See id. at 1341 (quoting Hodge v. Police Officers, 802 F.2d 58, 61–62 (2d Cir. 1986)); see also Sawma v. Perales, 895 F.2d 91, 95 (2d Cir. 1990). Among these are:

> [T]he indigent's ability to investigate the crucial facts, whether
> conflicting evidence implicating the need for cross-examination will

> be the major proof presented to the fact finder, the indigent's ability
> to present the case, the complexity of the legal issues, and any
> special reason . . . why appointment of counsel would be more likely
> to lead to a just determination.

Hodge, 802 F.2d at 61–62. None of these factors are controlling, however, and each case should be decided on its own facts. Id.

Assuming this case may be of substance, the Court finds that, at this stage of the proceeding, the dispute is limited to Plaintiff's Fourteenth Amendment deliberate medical indifference claims, which do not appear to present overly complex issues. In addition, it appears to the Court that Plaintiff has the ability to investigate pertinent facts and present his case, having asserted Fourteenth Amendment claims against Cayuga County and several employees of Cayuga C.J. that survived sua sponte review. Plaintiff admits as much in his Motion for Counsel, stating: "This Plaintiff has no problem presenting his case, litigating past summary judgment, serving discovery and getting this case to trial." Mot. Counsel at 2. Moreover, based on the past practice of this Court, if this case proceeds to trial, it is highly likely that this Court will appoint trial counsel at the final pretrial conference. This Court is not aware of any special reason to appoint counsel at this time.

For these reasons, the Court finds that appointment of counsel is unwarranted at this time. Plaintiff may file another motion for appointment of counsel in the event he can demonstrate that, in light of specific changed circumstances, consideration of the aforementioned factors warrants granting the application.

## VI.    REQUEST FOR A <u>VALENTIN</u> ORDER

Plaintiff filed a motion to compel Sheriff Schenck to identify the John Doe defendants. Dkt. No. 4. Given that the Court has already dismissed claims against Jail Commander John Doe #1, Legal Services Supervisor John Doe #2, Disciplinary Coordinator John Doe #6, and the

"various employees" also listed as "Defendants 10–15," Plaintiff's motion to compel is denied with respect to those defendants.

The Court reaches a different conclusion, however, with respect to the John Doe defendants to Plaintiff's Fourteenth Amendment deliberate medical indifference claims, which have survived sua sponte review.

Under Valentin v. Dinkins, a pro se litigant is entitled to assistance from the district court in identifying a defendant. 121 F.3d 72, 76 (2d Cir. 1997) (per curiam). In the Complaint, it is possible that Plaintiff has supplied sufficient information to permit the Cayuga County Attorney to identify Doctor John Doe #4, Medical Director John Doe #3, and Mental Health Doctor John Doe #5. See generally Dacosta v. City of New York, 296 F. Supp. 3d 569, 599 (E.D.N.Y. 2017) (stating that the Second Circuit "has realized that 'where the facts are peculiarly within the possession and control of the defendant' the plaintiff may plead the facts 'upon information and belief' and then utilize discovery procedures to support her allegations" and observing that "Valentin is an extension of this principle where the name of the proper defendant is unknown to the plaintiff but can easily be obtained by the government" (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010))).

It is therefore ordered that, to the extent possible, the Cayuga County Attorney must ascertain the identity of each John Doe whom Plaintiff seeks to sue for Fourteenth Amendment deliberate medical indifference and the address where each defendant medical officer may be served. The Cayuga County Attorney must provide this information to Plaintiff and the Court within **sixty (60) days** of this Memorandum-Decision and Order. To the extent Plaintiff sought to procure this information from Sheriff Shenck in his motion, that request is denied as moot.

VII.   **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's motion for assistance in obtaining a certified IFP application (Dkt. No. 5) is **DENIED as moot**; and it is further

**ORDERED**, that Plaintiff's IFP Application (Dkt. No. 10) is **GRANTED**;[12] and it is further

**ORDERED**, that the Clerk of the Court provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's Inmate Authorization, and notify the official that this action has been filed and that Plaintiff is required to pay the Northern District of New York the statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED**, that the Clerk provide a copy of Plaintiff's Inmate Authorization to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED**, that Plaintiff's Fourteenth Amendment deliberate medical indifference claims regarding the delays in treating his extreme chest pains against Doctor John Doe #4, Medical Director John Doe #3, and Cayuga County **SURVIVE** sua sponte review; and it is further

**ORDERED**, that Plaintiff's Fourteenth Amendment deliberate medical indifference claims regarding his lack of mental health treatment against Medical Director John Doe #3, Mental Health Doctor John Doe #5, and Cayuga County **SURVIVE** sua sponte review; and it is further

---

[12] Plaintiff should note that, although the Court has granted his application to proceed IFP, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED**, that Plaintiff's HIPAA claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b), for failure to state a claim upon which relief may be granted; and it is further

**ORDERED**, that Plaintiff's remaining claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b), for failure to state a claim upon which relief may be granted; and it is further

**ORDERED**, that the Clerk **TERMINATE** the following defendants from this action: Sheriff Shenck, Under-Sheriff Smith, Jail Commander John Doe #1, Legal Services Supervisor John Doe #2, Disciplinary Coordinator John Doe #6, and the "various employees" also listed as "Defendants 10–15" on the docket; and it is further

**ORDERED**, that Plaintiff's request for a <u>Valentin</u> order (Dkt. No. 4) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that the Clerk shall send a copy of the Complaint and this Memorandum-Decision and Order to the Office of the Cayuga County Attorney at the following address: Cayuga County Attorney, 160 Genesee Street, 6th Floor, Auburn, New York, 13021; and it is further

**ORDRERED**, that, to the extent possible, the Cayuga County Attorney shall ascertain the identity and the address where each defendant may be served as to Doctor John Doe #4, Medical Director John Doe #3, and Mental Health Doctor John Doe #5; and it is further

**ORDERED**, that the Cayuga County Attorney must provide this information to the Court within **sixty (60) days** of the date of this Memorandum-Decision and Order; and it is further

**ORDERED**, that, upon receipt of a response from the Cayuga County Attorney, as directed above, the Clerk shall return this file to the Court for further review; and it is further

**ORDERED**, that Plaintiff's Motion for Preliminary Injunctive Relief (Dkt. No. 2) is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Motion for Counsel (Dkt. No. 3) is **DENIED**; and it is further

**ORDERED**, that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; failure to do so will result in the dismissal of his action**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on Plaintiff, together with a copy of the original Complaint.

**IT IS SO ORDERED.**

DATED:        February 28, 2023
              Albany, New York

LAWRENCE E. KAHN
United States District Judge

26