UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHANN ALEXANDER BASS,

                        Plaintiff,

-against-                                            9:22-CV-1107 (LEK/ML)

CAYUGA COUNTY, *et al.*,

                        Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

After commencing this action on October 26, 2022, Dkt. No. 1 ("Complaint"), pro se Plaintiff Johann Alexander Bass filed an amended complaint on June 22, 2023, alleging constitutional violations that occurred while Plaintiff was in pretrial detention at the Cayuga County Jail ("Cayuga Jail"), Dkt. No. 37 ("Amended Complaint"). Now before the Court is Defendants' motion to dismiss. Dkt. No. 63 ("Motion"). Plaintiff has filed a response to the Motion, Dkt. No. 68 ("Response"), and Defendants have filed a reply, Dkt. No. 75 ("Reply").

For the reasons that follow, Defendants' Motion is denied.

**II.    BACKGROUND**

The Court assumes familiarity with the facts alleged in the Complaint and Amended Complaint as detailed in the Court's sufficiency orders, see Dkt. No. 18 ("February Sufficiency Order") at 5–9; Dkt. No. 42 ("September Sufficiency Order") at 1–2. In the September Sufficiency Order, this Court found that Counts One and Two of the Amended Complaint survived sua sponte review. See Sept. Sufficiency Order at 7. Count One alleges a deliberate indifference claim for delay in medical care ("Medical Care Claim") against Cayuga County and

1

Medical Director Adam Duckett ("Duckett"), as well as Nurse Brittany Marquez ("Marquez"), Nurse Haley Aldrich ("Aldrich"), and Nurse Debra Salato ("Salato") (collectively, "Nurse Defendants"). Count Two alleges a deliberate indifference claim for delay in mental health treatment ("Mental Health Claim") against Cayuga County, Duckett, and Social Worker Monica Lacey-Hastings ("Lacey-Hastings").

## III.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The Supreme Court has stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleading facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678–79.

IV.   DISCUSSION

Defendants move to dismiss Plaintiff's medical and mental health claims on four grounds: (1) failure to state a claim against Cayuga County; (2) failure to state a cause of action for deliberate indifference to a medical or mental health need; (3) the individually named defendants are entitled to qualified immunity; (4) and failure to allege personal involvement of the individually named defendants. See Mot. at 9–16.[1]

A.  **Failure to State a Claim Against Cayuga County**

Defendants argue that Plaintiff has not sufficiently alleged a Monell claim against Cayuga County. See id. at 10. "[A] municipality cannot be held liable *solely* because it employs a tortfeasor . . . ." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). "Congress did not intend municipalities to be held liable [under Section 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." Id. Therefore, local "governments should be held responsible [under Section 1983] when, and only when, their official policies cause their employees to violate another person's constitutional rights." City of St. Louis v. Praprotnik, 485 U.S. 112, 122 (1988). As a result, in order for a municipality to be liable under Section 1983 for acts of a public official, a plaintiff must plausibly allege "that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (citing Monell, 436 U.S. at 690–91). Boilerplate assertions of a municipal policy or custom are insufficient to survive a motion to dismiss. See Plair v. City of New York, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (collecting cases).

Defendants argue that Plaintiff has not alleged the existence of any municipal policy, custom, or practice that caused the violation of Plaintiff's constitutional rights. See Mot. at 10.

---

[1] Page numbers refer to ECF pagination.

3

Case 9:22-cv-01107-LEK-ML   Document 80   Filed 06/13/24   Page 4 of 11

However, Plaintiff alleges that Cayuga County is liable "through custom and usage of acts contributing to delays in medical care." Am. Compl. at 11. Defendants argue that this passing reference is not sufficient, as "[t]here is no allegation as to . . . which policies that did not exist resulted in the violation of [Plaintiff's] constitutional rights." Mot. at 9–10. But Plaintiff specifically alleges that "lack of policies regarding medical screening at the booking stage, triage, assessment and timeliness of care, lack of adequate health needs request policies and procedures . . . are the driving force or otherwise contributed to the delay in medical care," Am. Compl. at 11. Unlike "boilerplate" references to policies without factual support, Plair, 789 F. Supp. 2d at 469, Plaintiff alleges the specific policies (or lack thereof) that affected the particular medical treatment he received, see Am. Compl. at 10–11. The Court finds it plausible that these specific policies (or lack thereof) could have been responsible for the delay in Plaintiff's care, especially since Defendants' actions are allegedly repeated on multiple occasions. See Am. Compl. at 10, 12, 14 (alleging the Nurse Defendants saw Plaintiff almost daily and Lacey-Hastings saw Plaintiff on multiple occasions). At this stage, with due regard to Plaintiff's pro se status, Plaintiff has stated claims against Cayuga County. See Bos. v. Suffolk Cnty., New York, 326 F. Supp. 3d 1, 23 (E.D.N.Y. 2018) (reading the complaint broadly to incorporate a sufficiently stated Monell claim).

    B.  Failure to State a Cause of Action for Deliberate Indifference

Defendants argue that Plaintiff has failed to allege a cause of action for deliberate indifference for both the Medical Care Claim and the Mental Health Claim. See Mot. at 10–13. To state a claim for deliberate indifference to a serious medical need, a pretrial detainee must satisfy a two-pronged test. "The first requirement is objective: 'the alleged deprivation of adequate medical care must be "sufficiently serious."'" Lloyd v. City of New York, 246 F. Supp.

4

3d 704, 717 (S.D.N.Y. 2017) (quoting Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 139 (2d Cir. 2013)). "Where a plaintiff alleges that inadequate care was provided—instead of alleging a failure to provide any treatment—the inquiry focuses on 'the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition.'" Revels v. Corr. Med. Care, Inc., No. 17-CV-88, 2018 WL 1578157, at *4 (N.D.N.Y. Mar. 28, 2018) (quoting Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003)).

"The second requirement is subjective . . . ." Lloyd, 246 F. Supp. 3d at 717. Specifically, a detainee must "allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." Charles v. Orange Cnty., 925 F.3d 73, 87 (2d Cir. 2019).

      *i.    Medical Care Claim*

Regarding the objective prong for Medical Care Claim, Plaintiff alleges that inadequate care was provided due to the seventeen-day delay in receiving medication. See Am. Compl. at 10–12. Defendants argue that Plaintiff advising Cayuga Jail personnel that he was having chest pains does not constitute a serious medical need. See Mot. at 12. Although having asthma is not considered sufficiently serious, experiencing an asthma attack or asthmatic symptoms can constitute a serious medical need under the Eighth Amendment. See Ennis v. Davies, No. 87-CV-1465, 1990 WL 121527, at *3 (S.D.N.Y. Aug. 15, 1990), on reconsideration, No. 87-CV-1465, 1991 WL 29172 (S.D.N.Y. Feb. 25, 1991), aff'd, 992 F.2d 320 (2d Cir. 1993) (denying summary judgment because the plaintiff suffered an asthma attack and was not given medication until later that evening); Patterson v. Lilley, No. 02-CV-6056, 2003 WL 21507345, at *4

5

(S.D.N.Y. June 30, 2003) (finding the plaintiff merely having asthma is not a serious medical need when the plaintiff "did not allege any discomfort or any symptoms of an emergent attack"). Here, Plaintiff alleges that he has asthma and that the Cayuga Jail staff were aware of this. See Am. Compl. at 11. Plaintiff then alleges that he experienced "extreme chest pains and everytime [he] breath[ed], coughed, sneezed or laughed, the pain increased causing [him] to show obvious signs of pain and distress." Id. at 10. These further allegations involve asthmatic symptoms and discomfort, which creates a "particular risk of harm" due to the deprivation of medication. Revels, 2018 WL 1578157 at *4. Accordingly, Plaintiff has alleged a serious medical need.

Regarding the subjective prong, Plaintiff alleges the Nurse Defendants were aware of his condition and delayed his medical care despite being in contact with Plaintiff almost daily. See Am. Compl. at 12. Plaintiff also alleges that Duckett "was aware of the increased risk to [Plaintiff's] health due to him knowing [Plaintiff] ha[s] asthma." Id. at 11. Duckett's alleged awareness of Plaintiff's asthma is supported by allegations that Duckett "had [Plaintiff's] blood drawn" and obtained Plaintiff's medical records from the local hospital. Id. at 11. Plaintiff therefore sufficiently alleges that Duckett knew or "*should have known* that failing to provide [asthma medication] would pose a substantial risk to [Plaintiff's] health." Charles, 925 F.3d at 87. Accordingly, the Court finds at this stage that Plaintiff has stated a deliberate indifference claim for delay in medical care.

    ii.    *Mental Health Claim*

Regarding indifference to Plaintiff's mental health, a severe anxiety attack can constitute a serious medical need. See Young v. Choinski, 15 F. Supp. 3d 172, 184 (D. Conn. 2014) ("[C]ase law within this Circuit recognizes that 'depression combined with severe anxiety attacks or suicide attempts is a serious medical need' in the context of deliberate indifference.") (citing

6

Zimmerman v. Burge, No. 06-CV-176, 2009 WL 3111429, at *8 (N.D.N.Y. Sept. 24, 2009)). Plaintiff's allegations of "manic episodes" along with allegations of "depression, psychological abuse, [and] paranoia" sufficiently constitute a serious medical need. Am. Compl. at 16.

Plaintiff also alleges Defendants' subjective awareness and subsequent indifference to Plaintiff's mental health need. Plaintiff claims he "submitted 8–10 requests for mental health treatment" but they were denied. Id. at 13. Plaintiff states that he won a grievance regarding his mental health claims—demonstrating that Defendants knew Plaintiff needs proper treatment—but Defendants still failed to provide proper treatment. See id. at 13. Defendants, however, argue that Plaintiff "simply disagree[s] with the care that was provided." Mot. at 12. But Plaintiff's allegations go further. Plaintiff alleges that Defendants did not provide a qualified mental health professional, and the person they provided—Lacey-Hastings—did not address any of his mental health concerns but only asked one question about suicide before "wrapping the conversation up." Am. Compl. at 14. Accordingly, Plaintiff alleges sufficient awareness on behalf of Defendants. With due regard to Plaintiff's pro se status, the Court finds at this stage that Plaintiff has stated a claim for deliberate indifference of his mental health need.

**C. Qualified Immunity**

Defendants argue that Duckett, Marquez, Aldrich, Salato, and Lacey-Hastings ("Individual Defendants") are protected by qualified immunity. See Mot. at 13–14. Qualified immunity protects officials from damages liability if their "conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, 577 U.S. 7, 11 (2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is

unlawful." District of Columbia v. Wesby, 583 U.S. 48, 63 (2018) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). Defendants bear the burden of demonstrating that the challenged conduct was objectively reasonable in light of the law existing at the time. See Mitchell v. City of New York, 841 F.3d 72, 79 (2d Cir. 2016) (citing Tellier v. Fields, 280 F.3d 69, 84 (2d Cir. 2000)). "The objective reasonableness test is met if officers of reasonable competence could disagree on the legality of the defendants' actions." Green v. Montgomery, 219 F.3d 52, 59 (2d Cir. 2000) (cleaned up).

Defendants argue that Plaintiff "failed to allege that any of the [Individual Defendants] knowingly violated the law." Mot. at 14. Defendants argue that Plaintiff's allegations instead show it is "objectively reasonable that the [Individual Defendants] believed their actions did not violate the law." Id. Defendants, who bear the burden of demonstrating that their conduct was objectively reasonable, see Mitchell, 841 F.3d at 79, do not cite a single case to support their assertion that their conduct was objectively reasonable. See Mot. at 13–14; Reply at 10–11. Furthermore, Defendants do not explain how a seventeen-day delay in providing medication or a failing to provide a mental health specialist while Plaintiff was "banging [his] head on a cell door" is objectively reasonable. Am. Compl. at 13. Therefore, the Court finds at this stage that Defendants have not met their burden of establishing that qualified immunity applies to the Individual Defendants.

### D. Failure to Allege Personal Involvement

Defendants lastly argue that the Individual Defendants did not have the requisite personal involvement in Plaintiff's alleged harms. "To sustain a § 1983 claim, the plaintiff must show that there was sufficient personal involvement in the alleged constitutional deprivations on the part of the defendants." Zdziebloski v. Town of E. Greenbush, N.Y., 336 F. Supp. 2d 194, 201–02

(N.D.N.Y. 2004) (Kahn, J.) (citing Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991)). "A plaintiff must thus allege a tangible connection between the acts of a defendant and the injuries suffered." Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986).

Defendants argue that Duckett is only the medical director at Cayuga Jail, and there is no allegation of his personal involvement in Plaintiff's treatment. See Mot. at 15. Regarding the Medical Care Claim, the Amended Complaint alleges that Duckett was informed of Plaintiff's condition and "increased risk to [his] health." Am. Compl. at 11. Plaintiff states that Duckett was personally involved in the decision-making process regarding Plaintiff's care, alleging that Duckett "had [Plaintiff's] blood drawn" and unnecessarily delayed treatment of Plaintiff's asthma condition. Id. At this stage, with due regard to Plaintiff's pro se status, the Court finds that Plaintiff has alleged Duckett's personal involvement in the Medical Care Claim. Regarding the Mental Health Claim, Plaintiff alleges that Duckett failed to refer Plaintiff to a qualified mental health doctor even after winning his grievance. See id. at 13–15. Plaintiff states that "Duckett was also negligent in his duties as Medical Director not requiring a qualified mental health doctor to be on staff." Id. at 14. These allegations involve Duckett's decision-making regarding Plaintiff directly, rather than as a disengaged supervisor. See Singletary v. Russo, 377 F. Supp. 3d 175, 185–86 (E.D.N.Y. 2019) (finding the defendant physician was personally involved in alleged failure to ensure that prisoner saw a necessary specialist). Therefore, with due regard to Plaintiff's pro se status, Plaintiff has alleged Duckett's personal involvement in the Mental Health Claim.

Defendants argue that the Nurse Defendants were not personally involved in the alleged delay in medical care. See Mot. at 15. Specifically, Defendants argue that the allegations that the Nurse Defendants' allegedly handled and processed requests for treatment is "conclusory." Id.

But Plaintiff alleges direct involvement of the Nurse Defendants as they made "daily rounds . . . during which time [Plaintiff] notified them of [his] extreme pain." Am. Compl. at 10. The Nurse Defendants were therefore personally involved because they handled the requests Plaintiff directly made to them.

Regarding Lacey-Hastings, Defendants argue that Plaintiff "fails to provide any allegation as to any harm that came to him as a result of her actions or inactions." Mot. at 15. This is incorrect, as Plaintiff alleges harm to his mental health that he suffered for sixteen months because Lacey-Hastings did not refer him to a qualified professional. See Am. Compl. at 14. At this stage, Plaintiff has alleged Lacey-Hastings's personal involvement in the Mental Health Claim.

Accordingly, the Court finds that Plaintiff sufficiently alleges the personal involvement of the Individual Defendants. As the Court finds that Plaintiff has stated claims for deliberate indifference to his medical and mental health needs, Defendants' Motion is denied.[2]

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion, Dkt. No. 63, is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

---

[2] Plaintiff submits multiple exhibits with his Response. See Resp. at 13–28 ("Exhibits"). Defendants argue the Court cannot consider the Exhibits. See Reply at 4–6. As the Court need not review the Exhibits to deny Defendants' Motion, the Court declines to take judicial notice of the Exhibits.

DATED:	June 13, 2024
	Albany, New York

_____
LAWRENCE E. KAHN
United States District Judge